IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| **ELIZABETH WILSON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **7:06-CV-4735-UWC** |
| **T.K. STASNLEY INC., JUSTIN PHILLIP POPE,** | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION
ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

On October 1, 2007, T.K. Stanley, Inc. and Justin Pope ("defendants") filed their Motion for Summary Judgment (Doc. 29). On October 22, 2007, Elizabeth Wilson ("plaintiff") filed her Response to Defendant's Motion for Summary Judgment (Doc. 32). In her brief, plaintiff concedes that summary judgment is appropriate on her claims for negligent entrustment, hiring, training, and supervision. Additionally, plaintiff fails to address defendant's motion on plaintiff's wantonness claim. Accordingly, this Court grants summary judgment on the above-mentioned claims. Based on the genuinely disputed facts, however, the motion is due to be denied on plaintiff's negligence claim.

**FACTUAL BACKGROUND**

This negligence action arises, quite simply, out of a traffic collision on McFarland Boulevard in Tuscaloosa, Alabama.  The plaintiff, Elizabeth Wilson, was traveling west on McFarland Boulevard before dawn on December 12, 2005, when the Nissan Altima she was driving collided with Defendants' company truck.  At the time of the accident, Plaintiff was in the right hand lane of the two westbound lanes and the Defendant, Justin Pope, was in the left hand lane.  (Def.s' Br. at 4-6.)

In the vehicle with the Plaintiff were Cynthia Walton, who occupied the front passenger seat of Plaintiff's vehicle, and Shirley Alston, who occupied the back seat.  In the vehicle with Pope were two other T.K. Stanley employees:  Chris Gardner, who was sitting in the front passenger seat, and Perry McDougle, who was asleep in the back seat.  Pope's supervisor at T.K. Stanley, Charles Loftin, was traveling in another company vehicle several car lengths ahead of Pope.  (Def.s' Br. at 4-6.)

Pope testified that Wilson's vehicle initiated the collision.  (Def.s' Br. at 5; Ex. C; Pope Depo. 30-31.)  Charles Loftin, who was traveling a few car lengths ahead of Pope, and Chris Gardner, Pope's front seat passenger, both testified that they witnessed the accident and saw Wilson's vehicle initiate the collision as well.

(*Id.*; Ex. D; Loftin Depo., 36-41; Ex. L; Gardner Depo., 33-37.)

Wilson and Walton were injured so badly in the accident that both claim to have no memory of the events. (Pl.'s Br. at 18). However, Shirley Alston, the backseat passenger, testified that Pope's vehicle initiated the collision. (Def.s' Br. at 6; Ex. B; Alston Depo, 69-73.)

## II. CONTROLLING LEGAL PRINCIPLES

With respect to Plaintiff's claim of negligence against Defendant, the controlling law at issue is essentially two-fold. First, Defendants claim that Shirley Alston's testimony is incompetent. Second, they raise a *Daubert* challenge to Plaintiff's expert.

First, under the Federal Rules of Evidence, every witness is presumed to be a competent witness. Fed. R. Evid. 601. Second, under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Court charged trial judges with acting as gatekeepers for unreliable expert testimony. The Court elaborated on the gatekeeping function in one of *Daubert's* progeny, *Kuhmo Tire Co., v. Carmichael*, 526 U.S. 137 (1999), stating that expert testimony is admissible under Federal Rule of Evidence 702 if it concerns (1) scientific, technical, or other specialized knowledge, that (2) will aid the jury in understanding a fact at issue. *Kuhmo Tire Co., v. Carmichael*, 526 U.S. 137, 141 (1999).

In the first prong of this analysis, *Daubert* contemplated a non-exclusive list of factors to help the trial court assess the reliability of scientific expert testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-94 (1993). These factors include: (1) whether the opinion is capable of being tested; (2) whether it has been subject to peer review; (3) potential error rate of the theory; (4) the existence of standards or controls; (5) whether the theory is generally accepted in the scientific community. *Id.* Under the second prong, *Daubert* contemplates that the trial court simply assess the relevance, or "fit", of the opinion to ensure that it has a valid scientific connection to the disputed facts in the case. *Id.* at 591.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue as to any material fact and that, based upon the undisputed facts, the movant is entitled to judgment as a matter of law. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990); *see also* Fed. R. Civ. P. 56(c).

The party requesting summary judgment always has the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "All doubts as

to the existence of a genuine issue of material fact must be resolved against the moving party." *See Hayden v. First Nat'l Bank of Mt. Pleasant*, 595 F.2d 994, 996-97 (5th Cir. 1979). Evidence that is merely colorable, conclusory, or conjectural does not create a genuine issue of material fact. *See, e.g.*, *Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988); *Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989).

### DISCUSSION

Upon the facts of record, a genuine issue of material fact clearly appears to exist with respect to the negligence of the defendant. However, Defendants have offered two primary arguments as to why summary judgment is appropriate in this case, even though "summary judgment is rarely appropriate in a negligence case." *Curry v. Wellborn Transport*, 678 So. 2d 158, 160 (Ala. Civ. App. 1996). First, Defendants claim that Wilson cannot overcome Defendants' properly supported motion for summary judgment through the use of Shirley Alston's "incompetent and inadmissible deposition testimony." (Def.'s Br. at 12.) Second, Defendants claim that Wilson cannot overcome their properly supported summary judgment motion through the "incompetent and inadmissible testimony of [Wilson's] putative accident reconstructionist, Michael Sutton." (*Id.* at 14.) In support of this second claim, Defendants raise a *Daubert* challenge against Sutton and further

allege that, even if the Court were to consider Sutton's opinion, his testimony fails to support Wilson's essential claims.

## I. Shirley Alston's Testimony

Defendants claim that Shirley Alston's testimony is inadmissible and incompetent essentially because it is "speculative." (Def.'s Br. at 12.) To be sure, Alston testified that Ms. Wilson was operating her vehicle in her own lane of traffic at the time of the accident. (Alston Depo., 17-18). Moreover, Alston has repeatedly testified that the T.K. Stanley truck came over on the Wilson car. (Alston Depo., 107-108).

To be sure, some discrepancies do exist in Alston's testimony and Defendant seeks to use these discrepancies as the basis for her incompetency as a witness. Alston stated in her deposition that she believed the truck driven by Pope was red or beige–it was, in fact, white. She has admitted that she was eating her breakfast at the time of the accident. Moreover, she testified that she could not see the stripes in the center of the road marking the two westbound lanes. (Alston Depo., at 76). Accordingly, Defendants claim that Alston's testimony is entirely speculative. Moreover, they contend that Wilson's own accident reconstruction expert has acknowledged that Alston could not likely have perceived which vehicle caused the accident if she could not see the center line. (Sutton Depo., at

116-17).

Without question, Alston's testimony appears to have some holes in it. However, nothing rises to the level of incompetence as contemplated by the Federal Rules of Evidence. The accident occurred before dawn; accordingly, her uncertainty as to the color of the T.K. Stanley truck is justified. Defendants make much ado about Alston's failure to observe the center line as being fatal to her testimony that the truck came over on to Wilson's vehicle. While a reference point is always important in determining the relative movement of objects, Alston's perception is not utterly discredited by her failure to observe the center line. Indeed, Defendants point to no authority that would say otherwise. They simply say that three independent witnesses observed the movement in a different way. It is sufficient to note that all three of these independent witnesses are employees T.K. Stanley. This Court affords no extra weight to Alston's testimony and acknowledges the gaps that would call it into question; however, such gaps are more properly called into question by a thorough cross-examination.

**II.  Michael Sutton's Testimony**

Defendants' have raised a *Daubert* challenge to Sutton's testimony, claiming that he has admitted that his opinions are not based upon authoritative sources in the field of accident reconstruction, nor has he tested his methodologies

or submitted them for peer review.  Defendants, however, do not elaborate on the need for such heightened review, *i.e.,* what it is about Sutton's testimony that is overly scientific or inherently unreliable.  Rather Defendants proceed to challenge his testimony on the basis that his opinions do not even support Wilson's theory of the accident.

Essentially, Defendants claim that Sutton's opinion is not thorough enough, *i.e.*, that his opinion that the damage pattern on Wilson's car indicated that Pope's truck's right front tire was turned to the right at the time of the accident is simply inconclusive.  Defendant's point to Sutton's admission that he never calculated the exact degree at which Pope's right front tire was turned to the right.  The Defendants claim that it is undisputed that the highway curved to the right at the area where the accident occurred; therefore, the exact degree of the tire is important.  Some turning to the right would be expected in order to conform to the curve in the road; however, at a certain point, the degree would indicate an intention to actually change lanes.  Sutton's failure to calculate this degree, Defendants contend, utterly destroys his theory.  Moreover, Defendants contend that Sutton admitted in his deposition that he could not determine where the vehicles were located in relation to the center line.  Accordingly, Sutton cannot offer a competent opinion that the collision occurred in Wilson's lane at all.

(Def.s' Br. at 18-20.)

Plaintiff contends that the Defendants mischaracterize Sutton's testimony altogether. Plaintiff claims that Sutton *has* testified that the damage could have only been made if the T.K. Stanley truck was in a right lane change type maneuver. (Sutton Depo. I, at 101-02.) Moreover, they contend that the *Daubert* challenge is also without merit. Arguments from Plaintiff ( as well as Defendant) on the *Daubert* issue are suspiciously scant. Plaintiff's only response is that Sutton *did* perform calculations, *did* rely on established principles of accident reconstruction, and *did* base his opinions on physical evidence without pointing to specific portions of deposition testimony.

Without further argument from either party, this Court is left to assume only that the *Daubert* challenge is misplaced altogether. The kind of accident reconstruction in this case, unlike other highly scientific or confusing kinds of new and untested expert testimony, is easy enough to comprehend. No red flags of unreliability appear to be raised either by Sutton's credentials or his description of his reconstruction. Indeed, Sutton's explanation of his reconstruction is clear and does not confuse this Court, nor would it confuse a reasonable jury. *(See generally* Sutton Depo I.)

## CONCLUSION

Accordingly, this Court sees no reason on the record why a jury would be incapable of parsing out the relative weight of Sutton's expert testimony, and for that matter, Alston's eyewitness testimony.  Summary Judgment on plaintiff's negligence claim is due to be DENIED.  Summary judgment on all of plaintiff's other claims is due to be GRANTED.

Done the 12th day of February, 2008.

_____
U.W. Clemon
United States District Judge